**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 19, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JOHN WILLIAM THOMAS FLECHS,

    Defendant - Appellant.

No. 22-5088

_____

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 4:21-CR-00026-CVE-1)**

_____

Amy W. Senia, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender with her on the briefs), Denver, Colorado for Defendant - Appellant.

Thomas E. Duncombe (Clinton J. Johnson, United States Attorney, Tulsa, Oklahoma; and Katherine A. Gregory, Assistant U.S. Attorney, Buffalo, New York, on the brief), for the Plaintiff - Appellee.

_____

Before **MATHESON**, **BACHARACH**, and **MORITZ**, Circuit Judges.

_____

**MATHESON**, Circuit Judge.

_____

A jury convicted Defendant-Appellant John William Thomas Flechs of attempted

enticement of a minor in violation of 18 U.S.C. § 2422(b).  On appeal, he argues (A) the

evidence at trial was insufficient to support his conviction and (B) the district court erred in giving a jury instruction on the term "grooming."  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.  BACKGROUND

### A.  *Factual History*[1]

In January 2021, Mr. Flechs, using the pseudonym "John Breezy," began conversations on the Kik online messaging platform with someone he believed to be a 14-year-old boy.  Suppl. ROA, Vol. II at 47, 114.  In fact, Mr. Flechs was messaging Sergeant John Haning, a member of the Rogers County, Oklahoma Internet Crimes Against Children Task Force.  *Id.* at 41.[2]  The minor told Mr. Flechs he was 14 years old and shared two photos of his face.  *Id.* at 54; Suppl. ROA, Vol. III, Ex. 1 at 8, 18.  Mr. Flechs responded that he was 35 and shared a photo of his face.  Suppl. ROA, Vol. II at 51; Suppl. ROA, Vol. III, Ex. 1 at 18-19.[3]

Over the next four days, Mr. Flechs and the minor discussed sexual topics in graphic detail, including oral sex, masturbation, the size of the minor's penis, and their previous sexual experiences.  *See* Suppl. ROA, Vol. III, Ex. 1 at 10-71.  Mr. Flechs asked

---

[1] This factual summary derives from the evidence presented at trial.

[2] We refer to Sergeant Haning as "the minor."

[3] We caution the reader that the communications between Mr. Flechs and the minor were sexually graphic.  Because Mr. Flechs was convicted of a sexual crime and challenges the sufficiency of the evidence on appeal, we recount the communications to evaluate whether the evidence was sufficient and to explain our decision.

multiple times about the minor's sexual desires, *id.* at 23, 45, and shared his own.  At other points, the minor asked Mr. Flechs to "teach" him how to have sex.  *Id.* at 29, 42, 56.  Mr. Flechs said, "Lol That's illegal," but continued the conversation.  *Id.* at 56.

After they discussed meeting in person, including Mr. Flechs's telling the minor that he was driving near the minor's home, *id.* at 60, Mr. Flechs asked the minor if he would be going to the skatepark, *id.* at 64-66.  The minor said yes, and when Mr. Flechs asked when the minor would be there, the minor asked Mr. Flechs to bring him a Dr. Pepper.  *Id.* at 65.  Mr. Flechs agreed but noted that he "c[ould]n't hang around" because he "[had] to take [his] daughter to gymnastics."  *Id.*  He later remarked that he was "going [t]o be in a hurry to get to gymnastics so [he] c[ouldn]'t hang out but [he'd] get [the minor] a dr pepper."  *Id.* at 66.  He also said there would be "no teaching" during the encounter, a euphemism for sex.  *Id.*

When Mr. Flechs arrived at the skatepark, he handed two Dr. Pepper sodas to an officer posing as the minor.  Officers then arrested him.

## B.  *Procedural History*

A grand jury indicted Mr. Flechs for attempted enticement of a minor in violation of 18 U.S.C. § 2422(b).  Mr. Flechs testified at trial.  A petit jury returned a guilty verdict.  The district court sentenced Mr. Flechs to 120 months in prison and five years of supervised release.

Mr. Flechs timely appealed.

## II.  DISCUSSION

On appeal, Mr. Flechs argues:

(A)  The trial evidence was insufficient to prove that he (1) intended to entice the minor or (2) took a substantial step toward enticement.

(B)  The jury instruction on the term "grooming" (1) violated Federal Rule of Evidence 605, (2) contained an unconstitutional presumption on the element of intent, and (3) misstated the law.

We reject these arguments and affirm.

### A.  *Sufficiency of the Evidence*

Mr. Flechs argues the Government presented insufficient evidence to prove he (1) had the requisite specific intent to entice a minor or (2) took a substantial step toward enticement.  His appeal falters on a misunderstanding of the law of enticement and a misapplication of the standard of review for sufficiency of the evidence.  We conclude the evidence was sufficient to convict him of attempted enticement of a minor under 18 U.S.C. § 2422(b).

### 1.  Standard of Review

"We review de novo whether the government presented sufficient evidence to support a conviction."  *United States v. Sells*, 477 F.3d 1226, 1235 (10th Cir. 2007) (quotations omitted).  "In so doing, we view the facts in evidence in the light most favorable to the government."  *Id.* (quotations omitted).  "[W]e owe considerable deference to the jury's verdict."  *United States v. King*, 632 F.3d 646, 650 (10th Cir. 2011) (quotations omitted).  "Our restrictive standard of review for a sufficiency of

4

the evidence question provides us with very little leeway." *Sells*, 477 F.3d at 1235 (quotations omitted).[4]

"While the evidence supporting the conviction must be substantial and do more than raise a mere suspicion of guilt, it need not conclusively exclude every other reasonable hypothesis and it need not negate all possibilities except guilt." *United States v. Erickson*, 561 F.3d 1150, 1158-59 (10th Cir. 2009) (quotations omitted). "We will not weigh conflicting evidence or second-guess the fact-finding decisions of the jury," *Sells*, 477 F.3d at 1235 (quotations omitted), and we defer to the jury's assessment of a witness's credibility, *United States v. Rodriguez-Flores*, 907 F.3d 1309, 1312 (10th Cir. 2018). "[O]ur role is limited to determining whether a reasonable jury could find guilt beyond a reasonable doubt, based on the direct and circumstantial evidence, together with the reasonable inferences to be drawn therefrom." *Sells*, 477 F.3d at 1235 (quotations omitted).

2. **Legal Background**

   a. *Enticement*

The United States Code provides:

> Whoever . . . knowingly persuades, induces, entices, or
> coerces any individual who has not attained the age of 18
> years, to engage in prostitution or any sexual activity for
> which any person can be charged with a criminal offense, or

---

[4] Mr. Flechs moved for judgment of acquittal under Federal Rule of Criminal Procedure 29 after the Government's case-in-chief and renewed the motion after he testified and the defense rested. He therefore preserved the issue for appeal. *See United States v. Kelly*, 535 F.3d 1229, 1234-35 (10th Cir. 2008).

attempts to do so, shall be fined under this title and
imprisoned not less than 10 years or for life.

18 U.S.C. § 2422(b).  "Congress's repeated use of the word 'any' suggests that Congress intended [§ 2422(b)'s] reach to be broad."  *United States v. Shill*, 740 F.3d 1347, 1352 (9th Cir. 2014).

We give the terms "persuade," "induce," and "entice" their ordinary meanings. "To persuade is to induce by argument, entreaty, or expostulation into some mental position; to induce is to move and lead (as by persuasion or influence); and to entice is to draw on by arousing hope or desire."  *United States v. Isabella*, 918 F.3d 816, 831 (10th Cir. 2019) (quotations omitted).[5]

b.  *Attempt*

To prove an attempt to commit a crime, the government must show (1) specific intent to commit the crime and (2) a substantial step toward completion of the crime.  *Id.*

i.  Specific intent

Specific intent is more than a general intent to commit the prohibited act.  *United States v. Blair*, 54 F.3d 639, 642 (10th Cir. 1995).  It requires the defendant to commit the act "voluntarily and purposely with the . . . intent to do something the law forbids." *Id.* (quotations omitted).

---

[5] Although Mr. Flechs was actually communicating with Sergeant Haning, "it is not a defense to . . . enticement and exploitation of minors that the defendant falsely believed a minor to be involved."  *United States v. Sims*, 428 F.3d 945, 960 (10th Cir. 2005).

6

In *United States v. Faust*, 795 F.3d 1243 (10th Cir. 2015), we said § 2422(b) "criminalizes the sexual grooming of minors, regardless of any intent to consummate the illegal sexual activity." *Id.* at 1249 (quotations omitted). The statute thus "requires only that the defendant intend to entice a minor, not that the defendant intend to commit the underlying sexual act." *Id.* (quotations omitted); *see United States v. Dwinells*, 508 F.3d 63, 65 (1st Cir. 2007) (rejecting "that section 2422(b) should be interpreted to include, as an additional element of the offense, an intent that the underlying sexual activity actually take place"). Stated differently, § 2422(b) "criminalizes an intentional attempt to achieve a *mental* state—a minor's assent." *Faust*, 795 F.3d at 1249 n.6 (quotations omitted).

Other circuits have similarly found that the statute proscribes an attempt to achieve a minor's assent. Thus, the statute "imposes no requirement that an individual endeavor to transform or overcome the will of his intended victim." *United States v. Waqar*, 997 F.3d 481, 488 (2d Cir. 2021) (quotations omitted). And "a defendant can be found to 'persuade' or 'entice' even a seemingly 'willing' minor." *United States v. Zupnik*, 989 F.3d 649, 654 (8th Cir. 2021). "The government must prove that the defendant intended to cause assent on the part of the minor, not that he acted with the specific intent to engage in sexual activity." *United States v. Lee*, 603 F.3d 904, 914 (11th Cir. 2011) (citations and quotations omitted).

   ii. Substantial step

The government must also "show that the defendant took a substantial step towards the commission of the ultimate crime, and that such step was more than mere preparation." *Faust*, 795 F.3d at 1248 (alterations and quotations omitted). Whether the

7

defendant took a substantial step is a "highly fact-specific inquiry." *Id.* (quotations omitted).

As we explained in *United States v. Fleming*, 667 F.3d 1098 (10th Cir. 2011):

> A substantial step must be something more than mere preparation, yet may be less than the last act necessary before the actual commission of the substantive crime. A step need not be the final step toward commission of a crime to constitute a substantial step. Thus, the fact that further, major steps remain before the crime can be completed does not preclude a finding that the steps already taken are substantial.

*Id.* at 1107 (citations, alterations, and quotations omitted). For attempted enticement, "the government must prove that the defendant took a substantial step toward causing assent, not toward causing actual sexual contact." *Lee*, 603 F.3d at 914.

"In assessing substantial steps toward . . . enticement to engage in sexual activity, we have drawn a rough line between 'harmless banter' and illegal inducement." *Isabella*, 918 F.3d at 832 (quoting *United States v. Thomas*, 410 F.3d 1235, 1246 (10th Cir. 2005)). We have recognized that a substantial step "can be accomplished by several means and is often carried out through a period of grooming." *Id.* at 833 (citation and quotations omitted).[6] We have held, for example, that meeting or planning to meet with a purported minor following sexual conversations may be a substantial step. *See Thomas*, 410 F.3d

---

[6] Though many enticement cases involve sexual grooming conversations, the Sixth Circuit in *United States v. Fox*, 600 F. App'x 414 (6th Cir. 2015) (unpublished), said "[t]hat evidence of sexually explicit online or telephone conversations sufficed to convict other defendants under § 2422(b) does not mean that such evidence is *necessary* to prove attempted enticement or coercion." *Id.* at 418. *Fox* is not precedential, but we find its reasoning instructive.

8

at 1246; *United States v. Munro*, 394 F.3d 865, 870 (10th Cir. 2005). But "travel or a definite plan to travel is not necessary to constitute a 'substantial step' under § 2422(b)." *United States v. Howard*, 766 F.3d 414, 425-26 (5th Cir. 2014); *see also United States v. Goetzke*, 494 F.3d 1231, 1235-37 (9th Cir. 2007) ("[T]ravel by a defendant to meet a potential victim is probative, but not required . . . .").

The dissent argues that a substantial step requires a proposal for sexual activity as a matter of law. Dissent at 20-21. But the statute and case law do not require a proposal, and such a categorical rule would run counter to our directive that "[t]he substantial step question is a 'highly fact-specific inquiry.'" *Isabella*, 918 F.3d at 832 (quoting *Faust*, 795 F.3d at 1248).

In § 2422(b), "Congress has made a clear choice to criminalize persuasion and the attempt to persuade." *Faust*, 795 F.3d at 1249. Attempted enticement under § 2422(b) requires proof of a substantial step toward "persuad[ing], induc[ing], entic[ing], or coerc[ing]" a minor "to engage in prostitution or any sexual activity." 18 U.S.C. § 2422(b). A crime this broadly defined "can be committed in many different ways." *Stokeling v. United States*, 139 S. Ct. 544, 554 (2019); *see United States v. Booker*, 543 U.S. 220, 251 (2005) ("[A]n act that meets the statutory definition [of a crime] can be committed in a host of different ways.").

Although evidence of attempted enticement may often include a sexual proposal, we have not held a proposal is necessary.[7] And other circuits have found a substantial

---

[7] The dissent mistakenly relies on *United States v. Lopez*, 4 F.4th 706 (9th Cir. 2021), and *United States v. Hart*, 635 F.3d 850 (6th Cir. 2011), to insist that other circuits

9

step based on evidence other than a proposal or acceptance of a proposal for sexual

activity. *See, e.g.*, *United States v. Clarke*, 842 F.3d 288, 298 (4th Cir. 2016) (finding the

defendant took a substantial step when he "brought candy to what he believed was a

weekend visit" with two minors because "[a] reasonable jury could have concluded that

[the] [d]efendant intended to use the candy to entice [the minors] to engage in sex acts");

*United States v. Hensley*, 574 F.3d 384, 391 (7th Cir. 2009) (finding "more than enough

for a jury to find a substantial step" where the defendant "groom[ed] [the victim] for sex

by conversing with her using multiple online personas," "arrange[d] a meeting place and

---

have "appeared to assume" a sexual proposal is always necessary for a § 2422(b) attempt conviction. Dissent at 5-6. In both cases, the defendant had proposed sexual activity. The issue presented on appeal was not whether a proposal was required but whether the defendant's proposal was for a "sexual activity for which any person can be charged with a criminal offense"—a different element of the offense. 18 U.S.C. § 2422(b). In other words, both cases concerned an element of the attempted enticement offense that is not at issue here.

In *Lopez*, the defendant argued he could not be prosecuted in Guam, where the § 2422(b) offense occurred, for the sexual acts he proposed. 4 F.4th at 718-19; *see id.* at 719 ("[The defendant] asks us to interpret Section 2422(b) as requiring the Government to charge a predicate offense and to prove Guam would have had jurisdiction to prosecute him for said predicate offense."). *Lopez* held that a defendant who has proposed sexual conduct may be convicted under § 2422(b) if the "proposed sexual conduct . . . would be criminal in a relevant territorial jurisdiction." *Id.* at 726. It did not assume that a proposal is always required.

In *Hart*, the Sixth Circuit held that "[t]o convict [the defendant] under 18 U.S.C. § 2422(b), the jury had to unanimously agree . . . that the sexual activity that [the defendant] attempted to persuade [the minor] to engage in would have been chargeable as a crime under Kentucky law." 635 F.3d at 855. The court rejected the defendant's argument that "the jury should have been required to identify in its verdict form which of the Kentucky statutes it unanimously concluded [he] violated." *Id.* Like *Lopez*, *Hart* did not assume that a sexual proposal was always required for a § 2422(b) conviction. It instead held that the jury need not unanimously agree on which law the proposed act would violate. *Id.* at 856.

10

time," and "*actually traveled* to the meeting place" (quotations omitted)); *United States v. Fox*, 600 F. App'x 414, 418 (6th Cir. 2015) (unpublished) (finding sufficient evidence for a § 2422(b) attempt where the defendant "flatter[ed]" the minor and "purchased expensive gifts for her").[8]

The dissent's strict proposal requirement would enable child predators like Mr. Flechs to avoid § 2422(b) liability through subtle manipulation by carefully avoiding requests for sex. Courts have emphasized how § 2422(b) enticement defendants manipulate children. *See, e.g.*, *United States v. Zobel*, 696 F.3d 558, 565 (6th Cir. 2012) (stating the district court "noted [the defendant], while not forcing himself upon the minors, had carefully cultivated and manipulated them" (alterations and quotations omitted)); *United States v. Kempter*, 29 F.4th 960, 966 (8th Cir. 2022) (holding "[t]he district court did not clearly err in concluding this was a case of grooming" in which the defendant "manipulated [the victim's] weakness").

"Congress intended [§ 2422(b)'s] reach to be broad." *Shill*, 740 F.3d at 1352. We see no reason to limit attempted enticement to cases with proposals.[9]

---

[8] Although each of these cases included a proposal, we do not read them to say that the courts necessarily "upheld the finding of a *substantial step* based on the defendant's sexual proposals." Dissent at 18.

[9] "[O]ur aim is not to decide whether [a defendant's] conduct is at least as 'criminal' as the conduct of others convicted under section 2422(b). Each of our precedents holds no more than that a reasonable jury could have found that the defendant at issue violated section 2422(b). Not surprisingly, none [of our precedents] guesses at or purports to have identified the minimum conduct that section 2422(b) proscribes." *Lee*, 603 F.3d at 916.

3. **Analysis**

    a. *Specific intent*

Mr. Flechs argues the Government adduced insufficient evidence to prove he specifically intended to entice the minor because "[e]ach time [the minor] propositioned Mr. Flechs for sex, Mr. Flechs declined." Aplt. Br. at 13. We are not persuaded.

First, Mr. Flechs misunderstands the law. A defendant need not desire to have sex with a minor to satisfy the intent element of § 2422(b).[10] The statute "requires only that the defendant intend to entice a minor, not that the defendant intend to commit the underlying sexual act." *Faust*, 795 F.3d at 1249 (quotations omitted). A defendant may be liable for enticement even if the minor propositioned the defendant or the minor was otherwise eager, predisposed, or willing to engage in proscribed sexual acts. *See Zupnik*, 989 F.3d at 654. The appropriate inquiry, therefore, is whether the Government presented sufficient evidence to prove Mr. Flechs intended "to draw [the minor] on" to commit a proscribed sexual act "by arous[ing] [the minor's] hope or desire." *Isabella*, 918 F.3d at 831 (quotations omitted).

Second, the Government introduced sufficient evidence to prove Mr. Flechs had specific intent to entice the minor. At trial, Mr. Flechs admitted that he "introduced sexual topics" in the Kik conversation. Suppl. ROA, Vol. II at 113. The minor made multiple efforts to convince Mr. Flechs to meet to have sex. Early in their conversations,

---

[10] Though "a jury could reasonably infer that Mr. Flechs had wanted to engage in sex with [the minor]." Dissent at 3.

the minor stated that he "would like to meet [Mr. Flechs] . . . [and] see what [he and Mr. Flechs] do." Suppl. ROA, Vol. III, Ex. 1 at 7. The minor reiterated the overture, asking Mr. Flechs, "What would u like to do if we meet?" *Id.* at 16. When Mr. Flechs responded that they could meet at a skatepark, the minor responded, "Fun and then 😊." *Id.* The minor also repeatedly asked Mr. Flechs to "teach" him how to have sex. *Id.* at 29, 42, 56.

Amidst the minor's statements, Mr. Flechs engaged in a highly graphic sexual discussion with the minor from which a rational jury could infer Mr. Flechs's intention to "arous[e] [the minor's stated] hope or desire" for sex. *Isabella*, 918 F.3d at 831 (quotations omitted). For example, Mr. Flechs told the minor in detail about his sexual experiences with a "cousin [who] was 12 or 13" (when Mr. Flechs "[w]as 16"). Suppl. ROA, Vol. III, Ex. 1 at 33-34. They also discussed Mr. Flechs's desire to "[c]aress whoever all over then please them with [his] mouth." *Id.* at 53.

During the conversations, Mr. Flechs also asked about the size of the minor's penis, *id.* at 26, 40-41, and asked him, "What do you want done to you[?]," *id.* at 23. Mr. Flechs also asked if the minor had "been [masturbating] while [Mr. Flechs had] been talking to [him]," *id.* at 51, and asked multiple times whether the minor had "finish[ed]," *id.* at 51, 55. He also messaged the minor several times when he knew the minor's purported guardian was away—including once at 4:25 a.m. to tell the minor he was "driving by [his] area again." *Id.* at 60-61. Even though Mr. Flechs stated he wanted to meet in a "[v]ery public place," a reasonable jury could understand these messages as

13

indicating Mr. Flechs's wish to meet the minor in person without adult supervision. *Id.* at 59.

A reasonable jury thus could have found that Mr. Flechs intended to entice the minor because the conversations "dr[e]w [the minor] on by arousing hope or desire" for sex. *Isabella*, 918 F.3d at 831 (quotations omitted). A jury therefore "could find [the intent element satisfied] beyond a reasonable doubt, based on the direct and circumstantial evidence, together with the reasonable inferences to be drawn therefrom." *Sells*, 477 F.3d at 1235 (quotations omitted).

Mr. Flechs argues his statements to the minor that he did not desire to have sex with him proved he lacked the requisite specific intent.[11] This argument reflects a cramped view of his statements to the minor, which were replete with graphic sexual descriptions and innuendo. *See* Suppl. ROA, Vol. III, Ex. 1. "[R]ather than examining the evidence in bits and pieces, we evaluate the sufficiency of the evidence by considering the collective inferences to be drawn from the evidence as a whole." *United States v. Brooks*, 438 F.3d 1231, 1236 (10th Cir. 2006) (alterations and quotations omitted). Mr. Flechs's argument fails to overcome our standard of review.

---

[11] Mr. Flechs did not unambiguously say no to sexual activity with the minor. *See* Suppl. ROA, Vol. III, Ex. 1 at 15 (responding "Yeah" to the minor asking if Mr. Flechs "want[ed] to [have sex with a man] again"); *id.* at 16 (responding to the minor's proposition by saying "Lmao We can be friends"); *id.* at 39 (responding to the minor's request that Mr. Flechs "be a teacher" with "Lmao I've forgotten the male experience"); *id.* at 56 (responding to the minor's request "[t]o be taught" with "Lol Thats illegal"); *id.* at 59-60 (responding to the minor asking "[w]ho's [sic] hot dog" they would be eating with "Perv Hit me up tomorrow").

14

"Even when a defendant, as here, denies having the requisite intent, a jury may disbelieve the defendant if his words and acts in the light of all the circumstances make his explanation seem improbable." *United States v. Porter*, 928 F.3d 947, 957 (10th Cir. 2019) (alterations and quotations omitted). The jury "was entitled to consider" Mr. Flechs's "demeanor on the witness stand as evidence of the truthfulness of his tale." *United States v. Richard*, 969 F.2d 849, 857 (10th Cir. 1992). A reasonable jury could have found Mr. Flechs's statements suggesting he did not intend to have sex with the minor were not credible when considered alongside his graphic, sexual conversations with the minor.

Our "restrictive standard of review for a sufficiency of the evidence question provides us with little leeway" to upset that finding. *Sells*, 477 F.3d at 1235 (quotations omitted). We cannot "second-guess th[at] fact-finding decision[] of the jury," *id.* (quotations omitted), because "[i]t is the province of the jury, rather than of the appellate court, to weigh the credibility of witnesses and to judge conflicting testimony," *United States v. Moya*, 5 F.4th 1168, 1187 (10th Cir. 2021) (quotations omitted). We must "resolve credibility issues in favor of the verdict." *United States v. Meacham*, 115 F.3d 1488, 1495 (10th Cir. 1997).

b. *Substantial step*

Mr. Flechs argues the trial evidence was insufficient to prove he took a substantial step toward enticement. We disagree.

First, he contends the "pre-meeting messages must make it clear that the purpose of the meeting is to engage in sexual activity with the minor." Aplt. Br. at 19. And he

15

asserts the evidence did not prove that "had the police not intervened, [he] would have persuaded and encouraged [the minor]—***while dropping off the soda***—to agree to someday have sex with him." Aplt. Reply Br. at 11.

But this argument is again premised on a misunderstanding of the law. As discussed above, the inquiry is not whether Mr. Flechs took a substantial step toward having sex with the minor but whether Mr. Flechs took a substantial step toward enticing the minor. A defendant may entice a minor even without an "inten[tion] to commit the underlying sexual act." *Faust*, 795 F.3d at 1249 (quotations omitted).

Second, Mr. Flechs maintains that his sexual conversations and meeting with the minor were merely preparatory. *See* Aplt. Br. at 16-20. Even if that were a plausible reading of the evidence, under the applicable standard of review, we cannot say the evidence was insufficient to support conviction. Mr. Flechs's sexually graphic and suggestive messages and his actions to meet with the minor were sufficient.

Mr. Flechs's grooming messages to the minor were relevant not only to his intent but also to whether he took a substantial step toward enticement. *See Howard*, 766 F.3d at 425 ("[G]rooming behavior plus other acts strongly corroborative of intent to entice illegal sex—such as detailed discussions to arrange a meeting with the minor victim—can suffice to establish a substantial step under § 2422(b)."); *Goetzke*, 494 F.3d at 1235-37 (holding grooming plus a proposal to meet was a substantial step); *Lee*, 603 F.3d at 904 (holding grooming conversations alone may be a substantial step). And here, the jury was instructed that "'grooming' can constitute a 'substantial step.'" ROA, Vol. I at 43.

16

"In assessing substantial steps toward [enticement], we have drawn a rough line between 'harmless banter' and illegal inducement." *Isabella*, 918 F.3d at 832 (quoting *Thomas*, 410 F.3d at 1246). A reasonable jury could have found:

- Mr. Flechs's graphic descriptions of his own sexual experiences as a minor, as well as his current sexual desires, and his invasive questions about the minor's penis and masturbation—continuing over four days—were hardly "harmless banter," *id.*, and instead were "enticing communications," *United States v. Davis*, 985 F.3d 298, 305 (3d Cir. 2021).

- Beyond Mr. Flechs's highly sexualized conversations with the minor, his agreeing to meet escalated matters and "dr[e]w [the minor] on by arousing hope or desire"—the definition of enticement. *Isabella*, 918 F.3d at 831 (quotations omitted); *Davis*, 985 F.3d at 305.

- Mr. Flechs crossed the substantial-step line when he went to an in-person meeting at the skatepark, perhaps even sooner when he was driving in the minor's neighborhood "again" and knew the minor's guardian was away. Suppl. ROA, Vol. III, Ex. 1 at 60-61.[12]

---

[12] Although Mr. Flechs's driving through the minor's neighborhood is not essential to affirm, it is not, as the dissent contends, a different "theory" untethered from the jury instructions. Dissent at 9 n.2. At trial, the prosecution presented this evidence, which was consistent with the jury instructions. The dissent cites *McCormick v. United States*, 500 U.S. 257 (1991), which reversed a circuit court for "announcing a [new] rule of law" and then applying "legal and factual grounds that were never submitted to the jury" to determine that the evidence was sufficient. *Id.* at 269-70. But that did not happen here.

The foregoing is consistent with our cases in which we have held that arranging or travelling to meet a minor after exchanging enticing messages may be a substantial step toward enticement. In *Thomas*, we held the defendant took a substantial step toward enticement "the moment he began making arrangements to meet [the purported minor], notwithstanding the lack of evidence that he traveled to the supposed meeting place." 410 F.3d at 1246. And in *Munro*, we found the defendant "took a substantial step towards completion of the crime by actually going to [a] prearranged meeting place." 394 F.3d at 869-70; *see also United States v. Berg*, 640 F.3d 239, 246 (7th Cir. 2011) (noting the defendant "d[id] not dispute that a face-to-face meeting in the course of a grooming process can be sufficient proof of a 'substantial step' toward the completion of a § 2422(b) attempt").

Under the requisite "'highly fact-specific inquiry,'" Mr. Flechs's actions fell on the "illegal inducement" side of the line. *Isabella*, 918 F.3d at 832 (quoting *Faust*, 795 F.3d at 1248). A rational jury could find Mr. Flechs took a substantial step toward enticement by exchanging sexual messages with the minor, arranging to meet him, and travelling to the meeting place.

Third, Mr. Flechs argues he had reasons unrelated to sex or enticement to go to the skatepark, including "an innocent desire to meet [the minor] in person and satisfy a curiosity about whether [the minor] was a real teenager or even a real person." Aplt. Br. at 22-23. He again skirts the standard of review. "[T]he evidence supporting the conviction . . . need not conclusively exclude every other reasonable hypothesis and it need not negate all possibilities except guilt." *Erickson*, 561 F.3d at 1158-59 (quotations

18

omitted).  "It is for the jury, as the fact finder, to resolve conflicting testimony, weigh the evidence, and draw inferences from the facts presented."  *United States v. Keck*, 643 F.3d 789, 793 (10th Cir. 2011).

In sum, the jury's determination that Mr. Flechs took a substantial step toward enticement was both reasonable and supported by sufficient evidence.  We cannot "second-guess th[at] fact-finding decision[] of the jury."  *Sells*, 477 F.3d at 1235 (quotations omitted).[13]

* * * *

Viewing the evidence in the light most favorable to the Government, we determine that "a reasonable jury could find guilt beyond a reasonable doubt, based on the direct and circumstantial evidence, together with the reasonable inferences to be drawn therefrom."  *Id.* (quotations omitted).  We affirm.

---

[13] Even if we accept the dissent's proposal requirement, a reasonable jury could infer that Mr. Flechs's graphic messages to the minor proposed sexual acts.  *See, e.g.*, Suppl. ROA, Vol. III, Ex. 1 at 10 ("Caught my friend's boys sucking each other off and it reminded me of all the fun I had growing up."); *id.* at 23 (asking the minor, "What do you want done to you[?]"); *id.* at 48-49 (telling the minor he was going to masturbate and asking if the minor was "[t]rying to give [him] a target" by sending a winking face emoticon).

In closing argument, the Government pointed out that Mr. Flechs asked the minor, "What do you want done to you[?]," Suppl. ROA, Vol. II at 124, and argued, "There is no doubt in this case that . . . [Mr. Flechs] was intimating to the child the things that he would like to do," *id.* at 132; *see* Black's Law Dictionary (11th ed. 2019) (defining "proposal" as including "a suggestion").  Evidence of an implicit proposal was consistent with the jury instructions and the Government's grooming argument.  And under our standard of review, we determine whether a reasonable jury could have convicted based on the evidence, *see United States v. Thomas*, 749 F.3d 1302, 1314 (10th Cir. 2014), including any evidence of a substantial step.  The dissent's cases to suggest otherwise, *United States v. Woodard*, 5 F.4th 1148 (10th Cir. 2021), and *United States v. Chavez*, 976 F.3d 1178 (10th Cir. 2020), did not involve sufficiency-of-the-evidence challenges.

B. *Jury Instruction*

The Government proposed and the district court adopted the following jury instruction without objection:

### Definition of "Grooming"

"Grooming" refers to deliberate actions taken by a defendant to expose a child to sexual material; the ultimate goal of grooming is the formation of an emotional connection with the child and a reduction of the child's inhibitions in order to prepare the child for sexual activity.

"Grooming" can constitute a "substantial step."

ROA, Vol. I at 43 (capitalization altered without notation).

Mr. Flechs argues the district court erred in instructing the jury on the meaning of "grooming," asserting the instruction constituted (1) error because it was impermissible judicial testimony in violation of Federal Rule of Evidence 605, (2) plain error because it established a mandatory presumption on the element of intent, and (3) plain error because it misstated the law regarding substantial step. Each of these arguments fails.

As a general matter, "[w]e review [a] district court's decision to give a particular jury instruction for abuse of discretion." *United States v. Toledo*, 739 F.3d 562, 567 (10th Cir. 2014). We review jury instructions as a whole "de novo in the context of the entire trial to determine if they accurately state the governing law and provide the jury with an accurate understanding of the relevant legal standards and factual issues in the case." *United States v. Jean-Pierre*, 1 F.4th 836, 846 (10th Cir. 2021) (alterations and quotations omitted).

20

1. **Rule 605**

Rule 605 provides, "The presiding judge may not testify as a witness at the trial." It also states, "A party need not object to preserve the issue." We therefore review de novo whether a district court violated Rule 605. *See United States v. Andasola*, 13 F.4th 1011, 1014 (10th Cir. 2021).

a. *Legal background*

"The district court violates Rule 605 when it adds to the record evidence." *Id.* at 1016 (quotations omitted).

"The purpose of jury instructions is to give jurors the correct principles of law applicable to the facts so that they can reach a correct conclusion as to each element of an offense according to the law and the evidence." *United States v. Kahn*, 58 F.4th 1308, 1317 (10th Cir. 2023). An instruction on the applicable law falls outside Rule 605 because the court is not "testify[ing] as a witness." Fed. R. Evid. 605.

As one leading treatise states, "[t]he most important factor" in determining whether a court's statement triggers Rule 605 "should be whether the judge's statement is essential to the exercise of some judicial function or is the functional equivalent of witness testimony." 27 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 6063 (2d ed. rev. 2023). "Criminal-statute elements often contain terms needing defining." *Moya*, 5 F.4th at 1180. And "courts commonly provide jury instructions that define an element's terms separate from the element itself." *Id.*

21

b. *Analysis*

In *Faust*, we said that § 2422(b) "criminalizes the sexual grooming of minors, regardless of any intent to consummate the illegal sexual activity." 795 F.3d at 1249 (quotations omitted). The term "grooming" thus carries legal significance because we have interpreted the statute to proscribe such behavior. The district court's instruction relied in substantial part on *Isabella*, *see* 918 F.3d at 833, and accurately restated our caselaw. It did not improperly "add[] to the record evidence." *Andasola*, 13 F.4th at 1016 (quotations omitted). Rather, it was comparable to "provid[ing] [a] jury instruction[] that define[d] an element's terms separate from the element itself." *Moya*, 5 F.4th at 1180. We find *Fox*, 600 F. App'x 414, persuasive. There, the Sixth Circuit rejected a challenge to a substantially similar grooming instruction because the instruction "adequately informed the jury of the relevant considerations and provided a basis in law for aiding the jury in reaching its decision." *Id.* at 420 (quotations omitted).[14] The instruction thus did not violate Rule 605.

Mr. Flechs argues that our opinion in *Andasola* demonstrates the instruction here was erroneous. But his reliance on *Andasola* is misplaced. There, the judge instructed the jury: "[T]here is only one video that exists in this case. . . . To the extent there was

---

[14] Consistent with the district court here, courts have instructed on the meaning of "pyramid scheme," *see, e.g.*, *United States v. Gold*, 177 F.3d 472, 478 (6th Cir. 1999), "check kiting," *see, e.g.*, *United States v. Montgomery*, 980 F.2d 388, 392-93 (6th Cir. 1992); *United States v. Bonnette*, 781 F.2d 357, 360 n.6 (4th Cir. 1986), and "churning," *see, e.g.*, *Davis v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 906 F.2d 1206, 1212-13 (8th Cir. 1990), even though none of these terms appeared in the underlying statute of conviction.

any implication that another video exists, that is not an accurate statement. There is only one video." 13 F.4th at 1014 (quotations omitted). We held the instruction was erroneous because it "introduced new evidence to the jury by deciding a disputed factual issue for the jury," namely whether there was only one video. *Id.* at 1016. The grooming instruction here added no such factual finding to the trial record and instead provided the jury a definition to aid its application of the law to the evidence.

## 2. **Presumption**

Mr. Flechs next argues the grooming instruction established a mandatory presumption on the intent element. He claims it instructed that if the jury found Mr. Flechs had "expose[d] a child to sexual material," the jury must also find that he intended to "prepare the child for sexual activity." ROA, Vol. I at 43 (capitalization altered without notation); *see* Aplt. Br. at 41-43. Mr. Flechs (1) misreads the instruction and (2) has failed to show plain error.

### a. *Standard of review*

Because Mr. Flechs did not object to the instruction at trial, we review for plain error.[15] Plain error review requires Mr. Flechs "to establish that (1) the district court

---

[15] The Government argues Mr. Flechs invited the alleged error because he consented to the instruction. Aplee. Br. at 33. "Under the invited error doctrine, this [c]ourt will not engage in appellate review when a defendant has waived his right to challenge a jury instruction by affirmatively approving it at trial." *United States v. Cornelius*, 696 F.3d 1307, 1319 (10th Cir. 2012). Invited error must be clear from the record. *See United States v. Zubia-Torres*, 550 F.3d 1202, 1207 (10th Cir. 2008). Here, it is unclear whether Mr. Flechs's attorney consented to the instruction itself or to the district court's statement about when it planned to give the instruction. *See* Suppl. ROA,

23

committed error; (2) the error was plain—that is, it was obvious under current well-settled law; (3) the error affected the defendant's substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *United States v. Booker*, 63 F.4th 1254, 1258 (10th Cir. 2023) (alterations and quotations omitted).  Mr. Flechs must show plain error "even when the underlying error is constitutional." *United States v. Gonzalez-Huerta*, 403 F.3d 727, 733 (10th Cir. 2005) (en banc); *see United States v. Chavez*, 229 F.3d 946, 951 (10th Cir. 2000).

b.  *Legal background*

A jury instruction may not establish an evidentiary presumption that requires the jury to find that the prosecution satisfied an element of the charged offense.  *See Francis v. Franklin*, 471 U.S. 307, 312-13 (1985).  We distinguish between a mandatory presumption and a "permissive inference."  *Patton v. Mullin*, 425 F.3d 788, 804 (10th Cir. 2005).

A mandatory presumption "instructs the jury that it must infer the presumed fact if the [Government] proves certain predicate facts."  *Francis*, 471 U.S. at 314.  A mandatory presumption "violate[s] the Due Process Clause if [it] relieve[s] the [Government] of the burden of persuasion on an element of an offense."  *Id.*  In contrast, "[a] permissive inference suggests to the jury a possible conclusion to be drawn if the [Government] proves predicate facts, but does not require the jury to draw that

---

Vol. II at 30.  Because it is not clear that Mr. Flechs "affirmatively approv[ed] [the instruction] at trial," any error was not invited.  *Cornelius*, 696 F.3d at 1319.

24

conclusion." *Id.* "A permissive inference violates the Due Process Clause only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury." *Id.* at 314-15.

c. *Analysis*

Mr. Flechs has not shown any error was plain or affected his substantial rights.

i.  Plainness

Mr. Flechs reads the instruction as directing the jury to impose a mandatory presumption of intent if he "expose[d] [the] child to sexual material." ROA, Vol. I at 43 (capitalization altered without notation). But the instruction provides no such clear directive. It does not mention presumption, intent, or even enticement. And to be plain, any error must be "clear or obvious" under current Supreme Court or Tenth Circuit law. *United States v. Brooks*, 736 F.3d 921, 930 (10th Cir. 2013) (quotations omitted). The Supreme Court and Tenth Circuit cases Mr. Flechs cites found an instruction improper only when it explicitly mandated a presumption.

For example, he cites *Sandstrom v. Montana*, 442 U.S. 510 (1979), which reviewed the trial court's instruction directing the jury that "the law presumes that a person intends the ordinary consequences of his voluntary acts." *Id.* at 512. The Supreme Court held the instruction erroneously called for a mandatory presumption because the jury was "not told that they had a choice, or that they might infer that conclusion," but "only that the law presumed it." *Id.* at 515. Mr. Flechs also cites *Patton*, in which we found error when an instruction explicitly directed that "a design to effect death is inferred from the fact of killing, unless the circumstances raise a

25

reasonable doubt whether such design existed." 425 F.3d at 803 (alterations and quotations omitted).[16]

The instruction here did not expressly state the law "presumed" an element was satisfied when the Government proved certain predicate facts. *Sandstrom*, 442 U.S. at 515. Nor did it mandate that the jury "infer[]"an element was satisfied. *Patton*, 425 F.3d at 803 (quotations omitted).

Because Mr. Flechs has not shown error that was "clear[ly] or obvious[ly]" contrary to settled Supreme Court or Tenth Circuit law, he has not met his burden under plain error review. *Brooks*, 736 F.3d at 930.

ii. Substantial rights

Mr. Flechs also has failed to show any error affected his substantial rights. He contends "the government could not prove its case solely with the Kik messages" because he "never proposed, suggested, intimated, requested or planned for [the minor and him] to engage in any sexual activity together." Aplt. Br. at 45. He asserts the grooming instruction was thus essential to the Government's case as the only way to prove Mr. Flechs had the relevant specific intent. *Id.* We disagree.

---

[16] Mr. Flechs cites other cases that similarly fall short. In *Francis*, the Supreme Court found an instruction was flawed because it was "cast in the language of command" and "carr[ied] precisely the message of the language condemned in *Sandstrom*." 471 U.S. at 316. And in *Wiley v. Rayl*, 767 F.2d 679 (10th Cir. 1985), we relied on *Sandstrom* and *Franklin* to find the trial judge erred by instructing the jury that "[t]here is the presumption that a person intends all of the natural and probable consequences of his voluntary acts [and] [t]his presumption is overcome if you are persuaded by the evidence that the contrary is true." *Id.* at 681 (quotations omitted).

26

Mr. Flechs again misunderstands enticement. We repeat: A defendant need not desire to have sex with a minor to satisfy the intent element of § 2422(b). The statute "requires only that the defendant intend to entice a minor, not that the defendant intend to commit the underlying sexual act." *Faust*, 795 F.3d at 1249 (quotations omitted). As our discussion of the sufficiency issue shows, the Government could prove intent based on the Kik messages and Mr. Flechs's testimony.

In addition, the district court properly instructed the jury (1) on the meaning of enticement and (2) that a defendant can entice a minor without intending to consummate a sexual act. *See* ROA, Vol. I at 36, 46; *see Faust*, 795 F.3d at 1249. In the face of these instructions and the evidence, Mr. Flechs has not shown that telling the jury the "ultimate goal of grooming" is "to prepare the child for sexual activity" was prejudicial. ROA, Vol. I at 43. As discussed above, the Government introduced sufficient evidence to prove Mr. Flechs enticed a minor even if he did not intend to consummate a sexual act with the minor. *See Faust*, 795 F.3d at 1249. Mr. Flechs thus has failed to show "a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004) (alterations and quotations omitted).

3. **Substantial Step**

Mr. Flechs argues the instruction "misstated the law regarding conduct that can constitute a substantial step" because it failed to require the prosecution to prove that he did more than engage in explicit sexual conversations. Aplt. Br. at 46 (quotations omitted). Again, because he did not object to the instruction, we review for plain error.

27

*See Booker*, 63 F.4th at 1258.  He has not shown any error was plain or affected his substantial rights.

a.  *Plainness*

As previously noted, an error is plain if it is "clear or obvious under current, well-settled law," meaning "either the Supreme Court or this court [has] addressed the issue." *Brooks*, 736 F.3d at 930 (quotations omitted).  Mr. Flechs cites no Supreme Court case. He relies on *Isabella*, which said the substantial step element was met when "trial evidence showed more than explicit sex talk."  918 F.3d at 835 (alterations and quotations omitted).  But *Isabella* did not say additional evidence is always necessary to prove a substantial step.  *See id.* at 835-36.  And the instruction is consistent with *Faust*, which said that § 2422(b) "criminalizes the sexual grooming of minors."  795 F.3d at 1243 (quotations omitted).[17]

b.  *Substantial rights*

Mr. Flechs has not shown "a reasonable probability that, but for the error claimed, the result of the proceeding would have been different."  *Gonzalez-Huerta*, 403 F.3d at 733 (quotations omitted).

The district court provided the jury with the meaning of "substantial step" in a separate, uncontested instruction:  "A substantial step is an act which, in the ordinary

---

[17] Mr. Flechs also cites *United States v. Gladish*, 536 F.3d 646 (7th Cir. 2008). *See* Aplt. Br. at 47.  Although "in certain circumstances, the weight of authority from other circuits may make an error plain," this one out-of-circuit case does not show any error was plain here.  *United States v. Hill*, 749 F.3d 1250, 1258 (10th Cir. 2014) (quotations omitted).

course of events, would lead to the commission of the particular crime." ROA, Vol. I at 39 (capitalization altered without notation); *see United States v. Heckard*, 238 F.3d 1222, 1231 (10th Cir. 2001) (stating we must review jury instructions "in their entirety" (quotations omitted)).

Even without the grooming instruction, a jury could find Mr. Flechs took a substantial step toward enticement when, in addition to the sexually graphic and suggestive conversations, he arranged to meet the minor and travelled to the meeting place. Mr. Flechs has not demonstrated a reasonable probability that a properly instructed jury would have found otherwise. He thus has not met his burden to show plain error. *United States v. Bustamante-Conchas*, 850 F.3d 1130, 1138 (10th Cir. 2017) (en banc); *Gonzalez-Huerta*, 403 F.3d at 732-33.

## III. CONCLUSION

We affirm.

*United States v. John William Thomas Flechs*, No. 22-5088
**BACHARACH**, J., dissenting.

This case stemmed from electronic messages sent by Mr. John William Thomas Flechs. Mr. Flechs thought that he was messaging a 14-year-old boy named *Mike*. In reality, Mike was a fictional individual created by the police to catch predators.

Mr. Flechs's messages were sexually graphic, but he didn't propose sexual activity with Mike. So the fictional Mike proposed sex. But Mr. Flechs didn't accept. Mike then proposed sex again. And Mr. Flechs again declined to accept.

Though Mr. Flechs declined to accept these sexual proposals, the government charged him under 18 U.S.C. § 2422(b) with attempt to entice a minor to engage in sexual activity. To obtain a conviction, the government needed to prove that Mr. Flechs had attempted to obtain Mike's assent to sex. The government couldn't meet that burden because

- it was the fictional Mike who had proposed sex and

- it was Mr. Flechs who had declined to accept these sexual proposals.

The jury found Mr. Flechs guilty anyway, and the majority affirms. I would reverse because the defendant never proposed a sexual activity or accepted such a proposal.

1.      **The government needed to prove a substantial step.**

To obtain a conviction, the government needed to prove beyond a reasonable doubt that Mr. Flechs

- had used a means or facility of interstate commerce

- to knowingly attempt to persuade, induce, entice, or coerce

- an individual that he believed to be younger than 18

- to engage in a prohibited act involving sexual activity for which a person could be charged with a criminal offense and

- had taken a substantial step toward commission of the offense.

18 U.S.C. § 2422(b); *United States v. Isabella*, 918 F.3d 816, 848 (10th Cir. 2019). We must decide whether the jury could reasonably find a substantial step toward the commission of a prohibited act.

In addressing the sufficiency of the evidence, we conduct de novo review. *United States v. Yurek*, 925 F.3d 423, 430 (10th Cir. 2019). This review entails consideration of the evidence in the light most favorable to the government. *Id.* We can reverse only if no reasonable factfinder could have found guilt beyond a reasonable doubt. *Id.* To find guilt beyond a reasonable doubt, the factfinder could rely on the evidence and reasonable inferences drawn from that evidence, but could not engage in "speculation" or "conjecture." *United States v. Arras*, 373 F.3d 1071, 1073–74 (10th Cir. 2004). Given the prohibition against speculation or conjecture, we can't

2

"uphold a conviction . . . by piling inference upon inference." *United States v. Valadez-Gallegos*, 162 F.3d 1256, 1262 (10th Cir. 1998).

**2.　There was insufficient evidence of a *substantial step* toward a prohibited act.**

From the evidence, a jury could reasonably infer that Mr. Flechs had wanted to engage in sex with Mike. But § 2422(b) doesn't criminalize wants; it criminalizes a substantial step to commit a prohibited act. *See* 18 U.S.C. § 2422(b); *United States v. Isabella*, 918 F.3d 816, 831 (10th Cir. 2019).

Here the prohibited act is an adult's sexual activity with a minor. 18 U.S.C. § 2422(b). So we must determine whether a jury could have found a *substantial step* to commit a prohibited act involving sexual activity with a minor.

**a.　A sexual proposal is necessary in light of the requirements for a substantial step and the acts prohibited under § 2422(b).**

To make that determination, we must consider

- what constitutes a *substantial step* and

- what constitutes a prohibited act.

A *substantial step* is "an appreciable fragment of a crime and an action of such substantiality that, unless frustrated, the crime would have occurred." *United States v. Vigil*, 523 F.3d 1258, 1267 (10th Cir. 2008) (quoting *United States v. Smith*, 264 F.3d 1012, 1016 (10th Cir. 2001)); *see*

3

*United States v. Gordon*, 710 F.3d 1124, 1151 (10th Cir. 2013) ("[A] substantial step is appropriately found where the defendant undertook an act adapted to, approximating, and which in the ordinary and likely course of things will result in, the commission of [a] particular crime." (internal citations & quotation marks omitted)). It wouldn't have been enough for Mr. Flechs to prepare to entice Mike; a *substantial step* requires conduct going beyond preparation. *See Gordon*, 710 F.3d at 1150 (stating that mere preparation does not amount to a *substantial step*).

The requirement of a *substantial step* serves to protect defendants from convictions based on "speculative inferences." *United States v. Hernandez-Galvan*, 632 F.3d 192, 198 (5th Cir. 2011) (quoting *United States v. Oviedo*, 525 F.2d 881, 885 (5th Cir. 1976)). "[U]nless and until the suspect's behavior manifests the firm commitment to perform a criminal act, the risk is too high that we may have simply misinterpreted perfectly legal behavior, particularly when it is borne of customs, practices, or eccentricities that are not widely shared." *Hernandez-Cruz v. Holder*, 651 F.3d 1094, 1103 (9th Cir. 2011); *see also United States v. Farner*, 251 F.3d 510, 513 (5th Cir. 2001) ("The substantial step must be conduct which strongly corroborates the firmness of defendant's criminal attempt.").

We must consider what steps are "substantial" based on the acts prohibited under § 2422(b). This section prohibits *persuasion*, *inducement*,

4

*enticement*, or *coercion* to engage in a sexual activity. 18 U.S.C. § 2422(b). We give these terms "their ordinary meanings." *United States v. Isabella*, 918 F.3d 816, 831 (10th Cir. 2019). The ordinary meaning of each term involves an action to overcome another person's resistance. *See United States v. Hite*, 769 F.3d 1154, 1161 (D.C. Cir. 2014) ("The ordinary meanings of the verbs persuade, induce, entice, and coerce demonstrate that § 2422(b) is intended to prohibit acts that seek to transform or overcome the will of a minor."). And a person can't typically overcome another person's resistance to an activity without proposing it. *See Propose*, Webster's Third New Int'l Dict. 1819 (1993, Philip Babcock Gove, Ph.D. ed.-in-chief) (first definition: "to form or declare a plan or intention"); *Propose*, Webster's II New Riverside Dict. 944 (1994) (first definition: "To put forward for consideration, discussion, or adoption"); *Proposal*, Black's Law Dict. 1474 (11th ed. 2019, Bryan A. Garner ed.-in-chief) (first definition: "Something offered for consideration or acceptance; a suggestion").

Given the ordinary meaning of the four statutory terms (*persuades*, *induces*, *entices*, *coerces*), two circuits have used the term *propose* as shorthand for the conduct prohibited under § 2422(b). *United States v. Lopez*, 4 F.4th 706 (9th Cir. 2021); *United States v. Hart*, 635 F.3d 850 (6th Cir. 2011). In these cases, the circuit courts addressed the statutory element involving persuasion, inducement, enticement, or coercion to

5

engage in sexual activity. *Lopez*, 4 F.4th at 719; *Hart*, 635 F.3d at 856. In both cases, the circuit courts appeared to assume that the four statutory terms require a proposal:

- "Section 2422(b)'s 'sexual activity for which any person can be charged with a criminal offense' element requires the Government to prove the defendant *proposed sexual conduct* that would have constituted any criminal offense in one or more relevant jurisdictions." *Lopez*, 4 F.4th at 719 (emphasis added).

- "Under § 2422(b), the government must prove that the sexual authority *proposed to a minor* could be charged as a criminal offense." *Hart*, 635 F.3d at 856 (emphasis added).

**b.    Whenever we've upheld the sufficiency of evidence under § 2422(b), a sexual proposal had existed.**

These apparent interpretations of § 2422(b) match our own case law. Before today, we have upheld findings of a *substantial step* under § 2422(b) in four published opinions:

1.    *United States v. Faust*, 795 F.3d 1243 (10th Cir. 2015)

2.    *United States v. Thomas*, 410 F.3d 1235 (10th Cir. 2005)

3.    *United States v. Munro*, 394 F.3d 865 (10th Cir. 2005)

4.    *United States v. Isabella*, 918 F.3d 816 (10th Cir. 2019)

In all of these cases, we upheld the convictions based on the defendants' proposals for sexual activity.

For example, in *Faust*, we relied on the defendant's discussions with the minor's mother. 795 F.3d at 1250. These discussions focused on the defendant's proposal for sex with the minor. *Id.*

*Thomas* was similar. There the defendant discussed his desire for sex with a fictional 12-year-old girl. 410 F.3d at 1246. That discussion of desire constituted a proposal to engage in sexual activity "now." *Id.*

*Munro* also involved a proposal for sex. There the defendant communicated with an undercover agent posing as a 13-year-old girl. 394 F.3d at 868. The defendant told the fictional girl that he wanted to engage in oral sex. *Id.* That statement constituted a sexual proposal.

In *Isabella*, the proposal involved an adult's request for a 14-year-old girl to send a pornographic photo of herself. 918 F.3d at 826. There the defendant sent a photo of his penis to a 14-year-old girl and asked what she had sent. *Id.* The girl responded by sending a naked photo from her neck down, and the defendant requested a "naughty" photo that included her face. *Id.* That request constituted a proposal for the girl to send child pornography, which is considered *sexual activity* under § 2422(b). 18 U.S.C. § 2427.[1]

---

[1]    In an unpublished case, we again applied a similar standard for a *substantial step*. *See United States v. Wales*, 127 F. App'x 424, 431 (10th Cir. 2005) (concluding that the defendant had taken a *substantial step* to entice a minor by sending "pornographic images to demonstrate to [a person he suspected to be a 12-year-old girl] the poses that he wanted from her").

In all of these cases, we relied on the defendants' proposals for sexual activity.

### c.     Sex talk alone doesn't constitute a *substantial step*.

We have observed that a *substantial step* requires "more than . . . explicit sex talk" with a minor. *Isabella*, 918 F.3d at 835 (quoting *United States v. Gladish,* 536 F.3d 646, 649 (7th Cir. 2008)). The observation applies here. Mr. Flechs told graphic stories about sex during his childhood, but those stories didn't suffice for a *substantial step*. *See id.*

### d.     The alleged *grooming* doesn't support the conviction without a sexual proposal.

Though sex talk alone wasn't enough for a *substantial step*, the government argued to the jury that Mr. Flechs had *groomed* Mike for future sexual activity. The jury instructions echoed the government's view, stating that *grooming*

- "refers to deliberate actions taken by a defendant to expose a child to sexual material" and

- "can constitute a substantial step."

R. vol. 1, at 43.

The majority credits the government's theory of *grooming*, pointing out that

- we said in *United States v. Faust* that enticement doesn't require an "intention to commit the underlying sexual act" and

8

- *Isabella* defined the term *enticement* as the arousal of "hope or desire."

Maj. Op. at 12, 14 (quoting *United States v. Faust*, 795 F.3d 1243, 1249 (10th Cir. 2015), and *United States v. Isabella*, 918 F.3d 816, 831 (10th Cir. 2019)). From these excerpts in *Faust* and *Isabella*, the majority concludes that a reasonable jury could have found an effort to entice Mike by arousing his hope or desire. Maj. Op. at 12. The problem with this conclusion is that

- the undercover agent, posing as Mike, was the individual who was proposing sex with Mr. Flechs and

- Mr. Flechs never agreed to these proposals.

Though Mr. Flechs never accepted Mike's sexual proposals, the majority relies on the graphic nature of Mr. Flechs's messages and trip to the skatepark.[2] But § 2422(b) isn't violated by graphic messages or an

---

[2]    The majority also theorizes that a jury could have found that Mr. Flechs "crossed the substantial-step line . . . when he was driving in the minor's neighborhood 'again' and knew the minor's guardian was away." Maj. Op. at 17 (quoting Suppl. R. vol. III, at 60–61). But the government didn't present the jury with this theory, and it didn't appear in the jury instructions. So we can't affirm the conviction based on the majority's new theory of a *substantial step*:

> This Court has never held that the right to a jury trial is satisfied when an appellate court retries a case on appeal under different instructions and on a different theory than was ever presented to the jury. Appellate courts are not permitted to affirm convictions on any theory they please simply because the facts necessary to support the theory were presented to the jury.

9

arrangement to meet; the defendant must take a substantial step to persuade, induce, entice, or coerce the minor to assent to a sexual activity. *See* Part 2(a), above. Mr. Flechs might have hoped for the relationship to escalate. But a *substantial step* involves more than hope. Mr. Flechs not only didn't say anything to suggest a sexual encounter, but also declined to accept any of Mike's multiple proposals for sex.

We've never recognized a *substantial step* in similar circumstances. For example, in *Faust*, the defendant had driven to the parking lot of a motel where he thought a 12-year-old girl was waiting. When the defendant saw a police car, he left. *United States v. Faust*, 795 F.3d 1243, 1246–47 (10th Cir. 2015). On appeal, the defendant challenged the sufficiency of the evidence under § 2422(b), arguing that his departure from the parking lot showed that he hadn't intended to follow through with the sexual encounter. *Id.* at 1248. We rejected this challenge because the government hadn't needed to prove an intent to follow through "with the arrangement for a sexual encounter." *Id.* We reasoned that "§ 2422(b) requires only that the defendant intend to entice the minor, not that the defendant intend to

---

*McCormick v. United States*, 500 U.S. 257, 270 n.8 (1991).

Even if this theory could be considered, it wouldn't support a *substantial step*. In the message, Mr. Flechs recounted driving in the neighborhood; but he didn't propose sexual activity or a meeting with Mike.

10

commit the underlying sexual act." *Id.* (quoting *United States v. Thomas*, 410 F.3d 1235, 1244 (10th Cir. 2005)).

But there's no suggestion in *Faust* that we would have upheld the conviction under § 2422(b) without the prior arrangements for a sexual encounter. *See id.* After all, the meeting took place only after the defendant had arranged to have sex with the daughter. *Id.* at 1246. In contrast, Mr. Flechs had declined to accept Mike's sexual proposals.

The majority relies not only on *Faust*, but also on our statement in *Isabella* that *enticement* refers broadly to the arousal of hope or desire. Maj. Op. at 12–13 (quoting *United States v. Isabella*, 918 F.3d 816, 831 (10th Cir. 2019)). From this definition, the majority concludes that Mr. Flechs might have been trying to arouse Mike's hope or desire by sending graphic messages and meeting at a skatepark. *Id.* But "[a] post-enticement act like travel can constitute a substantial step in violating § 2422(b)" only if the travel "relate[s] to the defendant's enticing communications." *United States v. Davis*, 985 F.3d 298, 305 (3d Cir. 2021). In other words, the travel must demonstrate that "the communications were not all 'hot air.'" *Id.* (quoting *United States v. Gladish*, 536 F.3d 646, 650 (7th Cir. 2008)); *see also id.* at 306 ("Requiring the substantial step to relate to the enticing communications prevents criminalizing otherwise lawful behavior and permitting improper inferences against a criminal defendant.").

11

Mr. Flechs's visit to the skatepark doesn't show that his graphic messages had constituted

- anything beyond "hot air" or

- an effort to obtain Mike's assent to a sexual act.

Until now, the circuits have relied on personal meetings to prove a *substantial step* only when the defendant had already proposed sexual activity. *See id.* at 305 n.29 (collecting cases). For example, in *United States v. Howard*, the Fifth Circuit explained that the defendant's conversations about sex and sending of sexual photographs hadn't constituted a *substantial step*. 766 F.3d 414, 426–27 (5th Cir. 2014). The step became substantial only when the defendant discussed arrangements for sex with underage girls. *Id.*

Our cases have upheld the finding of a *substantial step* only when the defendant had proposed a sexual activity before making arrangements to meet. *See Faust*, 795 F.3d at 1250; *Thomas*, 410 F.3d at 1246; *Munro*, 394 F.3d at 869–70. Given the absence of any prior proposals for sexual activity, Mr. Flechs's trip to the skatepark couldn't constitute a *substantial step*.

The majority points to three opinions for the point that *grooming* could bear on the finding of a *substantial step*:

1.    *United States v. Howard*, 766 F.3d 414, 425 (5th Cir. 2014)

12

2.    *United States v. Goetzke*, 494 F.3d 1231, 1235–37 (9th Cir. 2007)

3.    *United States v. Lee*, 603 F.3d 904, 904 (11th Cir. 2011)

Maj. Op. at 16.

But these cases also involved sexual proposals by the defendants, and the courts didn't suggest that a conviction could lie under § 2422(b) without a sexual proposal. In *Howard*, for example, the Fifth Circuit said that the defendant had crossed the line to criminality only when he told the "undercover police officer to perform sex acts on and procure birth control for [underage] girls to get them ready for him." 766 F.3d at 426. In *Goetzke*, the defendant suggested an exchange of pictures, expressed a desire to rub the boy's "nice butt," and said that he wanted to perform oral sex on the boy. 494 F.3d at 1235. In *Lee*, the defendant repeatedly expressed a desire to "complete the act" of sex with a child, providing details on when and how. 603 F.3d at 915. Though *grooming* might be pertinent, the cited cases don't support the finding of a *substantial step* without a sexual proposal.[3]

---

[3]    The majority also cites *United States v. Berg*, noting that there the defendant didn't dispute the sufficiency of grooming to prove a substantial step. Maj. Op. at 18 (citing *United States v. Berg*, 640 F.3d 239, 246 (7th Cir. 2011)). In *Berg*, the defendant challenged the element of intent—not substantial step. *Berg*, 640 F.3d at 246, 250; *see also* Individual Br. and Required Short App'x of Defendant-Appellant at Pt. II, *United States v. Berg*, No. 09-2498 (7th Cir. Sept. 1, 2009), *available at* 2009 WL 2946715 (arguing only that the government failed to prove specific intent to engage in sexual activity with the minor when they were to meet). The defendant

13

### e. No other circuit has upheld a conviction under § 2422(b) without a sexual proposal.

The majority states that three other circuits have upheld convictions under § 2422(b) based on evidence other than a sexual proposal, citing a Seventh Circuit opinion, a Fourth Circuit opinion, and an unpublished Sixth Circuit opinion:

1. *United States v. Hensley*, 574 F.3d 384 (7th Cir. 2009)

2. *United States v. Clarke*, 842 F.3d 288 (4th Cir. 2016)

3. *United States v. Fox*, 600 F. App'x 414 (6th Cir. 2015) (unpublished)

Maj. Op. at 9–11. As the majority acknowledges, however, all of these cases included sexual proposals by the defendants. Maj. Op. at 11 n.8.

For example, the majority states that in *Hensley*, the court "[found] 'more than enough for a jury to find a substantial step' where the defendant 'groom[ed] [the victim] for sex by conversing with her using multiple online persons,' 'arrange[d] a meeting place and time,' and '*actually traveled* to the meeting place.'" Maj. Op. at 10–11 (quoting excerpts of *Hensley* with emphasis added in the majority opinion). This description suggests that *Hensley* upheld the finding of a *substantial step* without a sexual proposal. But that suggestion isn't correct.

---

presumably declined to dispute the existence of a substantial step because he had told the fictional girl that he expected "a good blow job" and wanted to perform oral sex on her. *Berg*, 640 F.3d at 241–42.

14

*Hensley* addressed the sufficiency of evidence under the plain-error standard, focusing on whether reversal was necessary to avoid a "manifest miscarriage of justice." *Hensley*, 474 F.3d at 390. The court concluded that the finding of a *substantial step* didn't involve a "manifest miscarriage of justice" based on "transcripts of the conversations" between the defendant and an undercover agent posing as a 13-year-old girl. *Id.* at 391. In these transcripts, the defendant learned that the girl was only 13 years old and

- told her "oh what the hell [I]'d still f*** you,"

- asked her "when she might want to have sex,"

- said "he was 'horny' and wanted 'to get to know [her] with [her] clothes off,'" and

- assured the girl that she wouldn't get pregnant if they had sex after her period or if they "engaged in coitus interruptus."

*Id.* at 387.

Despite these open requests for sex, the majority cites this opinion as an example of a court finding "a substantial step based on evidence other than a proposal or acceptance of a proposal for sexual activity." Maj. Op. at 9–11. The majority is mistaken: The Seventh Circuit expressly upheld the finding of a *substantial step*—under the plain-error standard—based on explicit sexual proposals.

The majority also relies on a Fourth Circuit case, *Clarke*, stating that there the court had upheld a finding of a *substantial step* based on the defendant's act of bringing candy to two minors. Maj. Op. at 10 (citing

15

*United States v. Clarke*, 842 F.3d 288, 298 (4th Cir. 2016)). In upholding the finding of a *substantial step*, the Fourth Circuit explained that the defendant had brought candy to the minors for "a weekend visit with [an 8-year-old boy and 9-year-old girl] during which Defendant hoped the children would engage in sex acts." *Clarke*, 842 F.3d at 298. But the court didn't infer the defendant's "hopes" from his delivery of candy; before bringing candy, the defendant had made it clear that he was coming to engage in sex acts with both the boy and girl.

The defendant had conveyed that intent by messaging an undercover officer who was posing as the father of the boy and girl. *Id.* at 292. When the defendant learned of the boy, the defendant responded: "OMG you have a son! We need to meet." *Id.* (quoting Joint App'x at 98, 254). The undercover officer then asked the defendant if he would be comfortable with the officer watching the children "perform sex acts on [the d]efendant." *Id.* "The defendant replied that 'a get together would be awesome,' and agreed to come over that weekend." *Id.* (cleaned up; quoting Joint App'x at 255). The defendant then asked the undercover officer about the children's sexual experience and whether the boy could get an erection and orgasm. *Id.* After fielding this question, the undercover officer asked the defendant if he would "play" with the girl as well as the boy. *Id.* The defendant replied: "[O]f course." *Id.* (quoting Joint App'x at 266).

16

Following these conversations, the defendant and undercover officer discussed their plans for a meeting where the defendant would have sex with the children. *Id.* The defendant instructed the undercover officer to tell the children that a "'good friend' . . . would be coming to their house to engage in sex acts." *Id.* (quoting Joint App'x at 117, 272). On the day of the planned meeting, the defendant asked the undercover officer if it would be okay to perform oral sex on the boy and girl. *Id.* These facts show numerous sexual proposals before the planned meeting.

But the majority cites *Clarke* as an example of a circuit court finding "a substantial step based on evidence other than a proposal or acceptance of a proposal for sexual activity." Maj. Op. at 9–10. I respectfully disagree with this characterization: The Fourth Circuit upheld the finding of a *substantial step* based on explicit sexual proposals.

Finally, the majority relies on an unpublished Sixth Circuit opinion, *Fox*, stating that there the court upheld a finding of *substantial step* based solely on flattery and purchase of expensive gifts. Maj. Op. at 11. There an underage girl testified that the defendant had "picked her up" at night and "revealed [his] favor: he wanted to have intercourse with her because, in [the girl's] words, 'he was going to jail for a really long time and he didn't know if he was going to ever get it again.'" *Fox*, 600 F. App'x at 417

17

(quoting R. at 159). The request for intercourse constituted a sexual proposal.[4]

In each of the cited opinions, the circuit court upheld the finding of a *substantial step* based on the defendant's sexual proposals.

**f.  A *substantial step* can't be based on the combination of graphic stories and trip to the skatepark.**

Despite the presence of a sexual proposal in all of these cases, the majority relies on the combination of Mr. Flechs's graphic stories and trip to the skatepark. For two reasons, the graphic stories and trip to the skatepark don't substitute for a sexual proposal.

First, the combination of graphic stories and trip to the skatepark don't show a firm commitment to persuade, induce, entice, or coerce Mike. *See* Part 2(a), above.

Second, without requiring a sexual proposal, we are inviting future juries to speculate from "perfectly legal behavior" about the firmness of a defendant's intent to commit a criminal act. *See* Part 2(a), above; *see also*

---

[4]  The majority also cites a statement from the Sixth Circuit's unpublished opinion: "That evidence of sexually explicit online or telephone conversations sufficed to convict other defendants under § 2422(b) does not mean that such evidence is necessary to prove attempted enticement or coercion." *Fox*, 600 F. App'x at 418 (quoted in Maj. Op. at 8 n.6). The majority states that it finds the Sixth Circuit's reasoning for this statement "instructive." Maj. Op. at 8 n.6. But the Sixth Circuit provided no reasoning for this statement. *See Fox*, 600 F. App'x at 418.

18

*United States v. Leos–Quijada*, 107 F.3d 786, 794 (10th Cir.1997) (stating that the evidence supporting a guilty verdict must raise more than the mere suspicion of guilt, and the jury's inferences must be "more than speculation and conjecture in order to be reasonable").

Mr. Flechs indisputably engaged in egregious sex talk with someone that he thought was only 14-years-old. But we've held that sex talk isn't enough to convict under § 2422(b). *United States v. Isabella*, 918 F.3d 816, 835 (10th Cir. 2019); *see* Part 2(c), above. Without a sexual proposal, how will we safeguard against speculation from sex talk alone?

The majority theorizes that the trip to a skatepark could constitute an effort to entice Mike into a sexual act. That's possible, but this theory rests on speculation because the trip itself didn't suggest an effort to entice Mike to do anything.

For both reasons, the graphic stories and trip to the skatepark can't create a *substantial step* without Mr. Flechs's making or accepting a sexual proposal.

**g.    The statutory language controls but doesn't require magic words.**

The majority calls my approach a "strict proposal requirement," suggesting that it would allow child predators to avoid criminal responsibility "by carefully avoiding direct requests for sex." Maj. Op. at 11. I respectfully disagree.

19

We're bound by the language that Congress used, and that language criminalizes a substantial step to persuade, induce, entice, or coerce a minor to engage in a sexual activity. 18 U.S.C. § 2422(b); *see* Part 2(a), above. In applying this statutory language, we must determine whether the defendant's conduct "manifests the firm commitment to perform a criminal act." *Hernandez-Cruz v. Holder*, 651 F.3d 1094, 1103 (9th Cir. 2011); *see* Parts 2(a), above.

A *firm commitment* may exist when the defendant proposes sexual activity to a minor. Without a sexual proposal, we would need to enter the realm of speculation about a defendant's further designs and blur the boundary between preparation and a firm commitment to criminality.

Although a sexual proposal is required, this requirement doesn't permit "subtle manipulation." *See* Maj. Op. at 11. A sexual proposal or assent to a sexual proposal could exist in many forms, and the law doesn't provide a catalog of those forms. But the law does require conduct manifesting a firm commitment to persuade, induce, entice, or coerce a minor to engage in sexual activity; and that requirement necessarily entails a sexual proposal of some sort.[5]

---

[5]   The majority theorizes that Mr. Flechs's graphic messages might have constituted an implicit proposal for a sexual act with Mike. Maj. Op. at 19 n.13. But the government doesn't assert this theory on appeal, and we generally consider it "imprudent" to affirm on a theory that the appellee hasn't advanced. *United States v. Woodard*, 5 F.4th 1148, 1154 (10th Cir.

20

\* \* \*

The majority upholds the conviction under § 2422(b) without the defendant's making or accepting a sexual proposal. In doing so, the majority disregards the need for conduct showing a firm commitment to persuade, induce, entice, or coerce a minor to assent to a sexual activity. By loosening these requirements, the majority muddies the line between explicit sex talk and a substantial step. *See United States v. Gladish*, 536 F.3d 646, 650 (7th Cir. 2008) ("Treating speech (even obscene speech) as the 'substantial step' would abolish any requirement of a substantial step."). I would instead retain that line and continue to require a firm commitment to persuade, induce, entice, or coerce a minor through a proposal for sexual activity.

2021); *United States v. Chavez*, 976 F.3d 1178, 1203 n.17 (10th Cir. 2021). So we need not decide whether Mr. Flechs made an implicit proposal.

21